UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SANDY VALCIN,                                   :

              Plaintiff,                       :

         -against-                            :

NEW YORK CITY DEPARTMENT            :
OF HOMELESS SERVICES,
                               :

           Defendant.                    :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

07 Civ. 1385 (DAB)(KNF)

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Sandy Valcin ("Valcin"), proceeding <u>pro se</u>, brings this action against the New York City

Department of Homeless Services ("DHS") pursuant to Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII") and Section [8-107(1)] of the

Administrative Code of the City of New York ("City Human Rights Law").  Valcin alleges

gender discrimination, contending DHS terminated her employment wrongfully, because she

took maternity leave.  Before the Court is the defendant's motion for summary judgment,

pursuant to Fed. R. Civ. P. 56.  The plaintiff opposes the motion.

## II. BACKGROUND

On June 28, 2004, Valcin commenced employment, with DHS, as a provisional fraud

investigator.  Valcin had not taken a civil service examination prior to her hiring nor did she

during her employment with DHS.  Valcin signed a Provisional Appointment Statement days

prior to beginning her job, indicating she understood that, as a provisional employee, her

"employment may be terminated at any time." Further, Valcin testified, at her deposition, that she recognized she did not hold a permanent position, because those with permanent positions had taken a civil service examination.

The plaintiff took approved maternity leave from December 19, 2004, until June 7, 2005. While on leave, DHS notified Valcin and all other provisional fraud investigators, by a letter dated March 21, 2005, that a certified list of those eligible for permanent appointment to the fraud investigator position had been generated. The letter explained that, upon receiving the list, DHS "ha[d] an obligation . . . to make selections from the list in order to fill approved vacancies and replace provisional employees in the [fraud investigator] title." As a result, DHS informed Valcin and the other provisional fraud investigators that, if their names did not appear on the certified eligible list, their employment "may be terminated in approximately one to two months." Those provisional fraud investigators who passed the civil service examination and were on the certified eligible list, but who "[were] not selected or . . . [were] not high enough on the list to be reachable for appointment," also faced possible termination.

In order to maintain a 24-hour operation, DHS opted to terminate the employment of its provisional fraud investigators in staggered rounds. The first round of people discharged were those with "disciplinary issues." DHS then instructed its managers to rank their remaining provisional fraud investigators, based on performance, so that the worst performers would be terminated first and the best performers last. Managers evaluated performance based on quality of work and tardiness.

DHS provisional fraud investigators who worked for less than a year, like Valcin, could not be ranked and thus, according to DHS, "fell in the middle." In a March 6, 2005 e-mail

2

message, Valcin's manager explained she could not "fairly rank" Valcin because she was not sufficiently familiar with Valcin's work.  In the e-mail message, Valcin's manager did, however, rank four other provisional fraud investigators, indicating number one was the "best" and number four the "worst."  In a later e-mail message, on April 6, 2005, Valcin's manager ranked her provisional fraud investigators "by job performance," with "[t]he best at #1."  On this list, Valcin's manager ranked her nine out of 20.

On June 8, 2005, Valcin returned to work from maternity leave; whereupon, DHS terminated her employment.  Valcin's termination letter, dated June 8, 2005, "confirm[ed] that as a result of the certification of the civil service list for the Fraud Investigator title, [her] services as a provisional employee with this title" were terminated.  According to an e-mail message sent by the administrative director of social services that day, Valcin was a third-round "bump," discharged "in order to bring in the civil service Fraud Investigators."  DHS terminated 35 provisional fraud investigators, in 2005, as a result of the certified eligible list.[1]

On December 17, 2005, Valcin filed a verified complaint with the New York City Commission on Human Rights ("NYCCHR") and the United States Equal Employment Opportunity Commission ("EEOC") charging DHS with gender and temporary disability (pregnancy) discrimination, in violation of the City Human Rights Law.  On June 2, 2006, NYCCHR issued a Determination and Order After Investigation dismissing Valcin's complaint for lack of probable cause.  NYCCHR described Valcin's termination as a "legitimate non-

---

[1]The record establishes that DHS employed a staggered termination schedule.  Effective May 8, 2005, DHS terminated 13 provisional fraud investigators.  Eight of those 13 were hired with or after Valcin.  Effective May 22, 2005, DHS terminated 15 provisional fraud investigators.  Ten of those 15 were hired with or after Valcin.  Effective June 12, 2005, DHS terminated Valcin and three other provisional fraud investigators.  One of those three was hired with or after Valcin.  Three more provisional fraud investigators were terminated after Valcin – two effective June 19, 2005, one effective July 21, 2005.  Both June 19 terminations involved employees hired with or after Valcin.

discriminatory administrative decision."  On October 2, 2006, NYCCHR affirmed its

Determination upon Valcin's request for review.  On November 28, 2006, EEOC sent Valcin her

Right to Sue letter, dismissing her charges and adopting NYCCHR's findings.

On February 26, 2007, Valcin commenced the instant action.  In her Second Amended

Complaint, the plaintiff alleges that, after her termination, DHS continued to employ provisional

fraud investigators, who had been hired with and after her.  Valcin alleges this disparate

treatment is the product of gender discrimination.  On May 1, 2009, DHS filed its motion for

summary judgment, to which Valcin filed her opposition on June 1, 2009.

### III. DISCUSSION

*Standard of Review for Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R.

Civ. P. 56(c); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert.

denied, 524 U.S. 911, 118 S. Ct. 2075 (1998); Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir.

2006). When considering a motion for summary judgment, "[t]he court must view the evidence

in the light most favorable to the party against whom summary judgment is sought and must

draw all reasonable inferences in his favor." L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81,

87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587,

106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact

exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law . . . .'  An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 [1986]). Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis omitted). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256, 106 S. Ct. at 2514. Summary judgment should only be granted if no rational jury could find in favor of the non-moving party. See Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

The defendant contends it is entitled to summary judgment because: (1) DHS is not a suable entity, under the New York City Charter ("Charter"); (2) Valcin cannot establish a prima facie case of gender discrimination; and (3) DHS has a legitimate, non-discriminatory reason for terminating Valcin's employment that the plaintiff fails to demonstrate is false.

*Suability*

Charter § 396 provides, in relevant part, that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York . . . ."  It is "well-established" that, under the Charter, "municipal agencies are not discrete legal entities and therefore cannot be named as defendants in suits for damages."  Walker v. New York City Dep't of Corr., No. 01 Civ. 1116, 2008 WL 4974425, at *9 (S.D.N.Y. Nov. 19, 2008) (citing Adams v. Galletta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) and Echevarria v. Dep't of Corr. Servs. of New York City, 48 F. Supp. 2d 388, 391 [S.D.N.Y. 1999]).  However, considering that the plaintiff is proceeding pro se, rather than simply grant summary judgment, on a "technical defect," it would be reasonable and efficient for the Court to "evaluate whether or not granting leave to amend the complaint would be futile."  Jenkins v. New York City Dep't of Homeless Servs., _ F. Supp. 2d _, No. 09 Civ. 499, 2009 WL 1938849, at *3 (S.D.N.Y. July 7, 2009).  In making this assessment, "the Court should evaluate the sufficiency of the [p]laintiff's claims, assuming the City was properly named as the defendant."  Id.; see, e.g., Walker, 2008 WL 4974425, at *10 ("references to 'Defendant' will refer to the City of New York" as the court proceeds in considering the defendant's summary judgment motion) and Renelique v. Doe, No. 99 Civ. 10425, 2003 WL 23023771, at *6-7 (S.D.N.Y. Dec. 29, 2003) (considering New York City's liability on a motion for summary judgment despite the fact that the named defendant is non-suable entity).  Therefore, the Court will proceed with its consideration of the merits of the defendant's summary judgment motion, assuming the plaintiff had named the proper defendant.

*Title VII Claim*

*Standard*

In order to survive a motion for summary judgment, a Title VII plaintiff must, in the first instance, establish a prima facie case of discrimination by showing: (1) she is a member of a protected class; (2) she is qualified to perform the job in question; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (citations omitted). If the plaintiff establishes her prima facie case, a presumption of discrimination arises and the burden of production, but not persuasion, shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse action. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000). If the defendant provides such a reason, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason offered by the defendant is a pretext for discrimination. See Dawson, 398 F.3d at 216.

*Prima Facie Case of Discrimination*

The defendant contends the plaintiff has not proven: (1) she was qualified for her position; or (2) her termination occurred under circumstances giving rise to an inference of discrimination.[2] Consequently, according to the defendant, it is entitled to summary judgment.

While the Court recognizes some authority exists for the proposition that a provisional employee is "no longer 'qualified' to keep his position upon the appointment of a certified

---

[2] The defendant concedes Valcin is a member of a protected class, thereby satisfying the first prong of the prima facie case. Moreover, termination is a "'materially adverse change' in the terms and conditions of employment" that constitutes an adverse employment action, for purposes of the third prong. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

candidate to fill it," As-Salaam v. New York City Dep't of Parks and Recreation, No. 02 Civ. 5646, 2007 WL 2126262, at *6 (E.D.N.Y. July 24, 2007), the Second Circuit has long discussed the qualification prong of the prima facie case as a question of "competence to perform the specified work." Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir. 1978).  Showing that one performed satisfactorily is sufficient for the purposes of establishing a prima facie case.  See id.; see Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (describing prong two of the prima facie case as met where an employee "performed her job duties satisfactorily").

Since Valcin worked for less than a year at DHS, her performance could not be rated when the eligible list was generated in 2005.  Nevertheless, Valcin's manager did rank her as the ninth best performer out of 20 provisional fraud investigators.  Moreover, it is clear from Valcin's termination during the third round of "bumps" that she did not present disciplinary problems nor did her performance warrant earlier termination.  Recalling that "[a] plaintiff's burden of establishing a prima facie case is de minimis," Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001), the Court concludes a reasonable juror could find that Valcin performed her worked satisfactorily.

The plaintiff still bears the burden of demonstrating that her termination occurred under circumstances that give rise to an inference of discriminatory intent.  Proof of "disparate treatment . . . is only one way to discharge [the] burden."  Abdu-Brisson, 239 F.3d at 468 (listing several circumstances from which discriminatory intent could be inferred).  Since employers are "unlikely to leave a 'smoking gun' attesting to a discriminatory intent," plaintiffs in employment discrimination suits must usually rely on circumstantial evidence.  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).  The question is whether the plaintiff has met her

8

"de minimis burden of showing circumstances that would permit a rational finder of fact to infer invidious discrimination."  Id. at 38.

The record establishes that two male provisional fraud investigators, who were ranked lower than Valcin by their manager, were retained by DHS longer than Valcin.  Manuel Cabrera commenced employment with DHS on the same day as Valcin.  Though Valcin's manager ranked Cabrera lower than Valcin,[3] Cabrera remained employed for about one month longer than Valcin.  Similarly, Victor Charles, who began working for DHS on the same day as Valcin, was ranked lower than she was,[4] but remained employed with DHS until July 2, 2006, more than a year longer than Valcin.  This evidence[5] could lead a reasonable factfinder to conclude DHS acted with discriminatory intent, terminating Valcin earlier than her male counterparts for taking maternity leave.  Thus, the plaintiff has established her prima facie case of discrimination.

*Legitimate, Non-Discriminatory Reason*

Even assuming Valcin did establish a prima facie case of discrimination, DHS maintains summary judgment should still be granted, because it has produced evidence of a legitimate, non-discriminatory reason for its action that the plaintiff has failed to prove is a pretext for discrimination.  Specifically, DHS contends it is obligated by statute and regulation to terminate provisional employees, like Valcin, once an eligible list is certified for a position.  See New York Civil Service Law ("CSL") § 65(3) (2009); Personnel Rules and Regulations of the City of New York ("PRR"), Rule 5.5.3.

---

[3] Valcin is ranked nine out of 20 provisional fraud investigators.  Cabrera is ranked 15 out of 20.
[4] Charles is ranked 12 out of 20.
[5] Of the provisional fraud investigators the plaintiff names in her Second Amended Complaint as those hired with her, but released after her, only Cabrera and Charles are ranked alongside Valcin, allowing the Court to assess the propriety of their order of termination.  To the extent the remaining provisional fraud investigators are not ranked – save for two, who were ranked on a different list than Valcin, by their own manager – their continued employment does not raise an inference of invidious discrimination.

"[T]he Civil Service Law authorizes [provisional] appointments only when there is no eligible list available for filling a vacancy in a competitive class . . . ." City of Long Beach v. Civil Serv. Employees Ass'n, Inc., 8 N.Y.3d 465, 470, 835 N.Y.S.2d 538, 540 (2007); see CSL § 65(1) (2009).[6]  "A provisional appointment to any position shall be terminated within two months following the establishment of an appropriate eligible list for filling vacancies in such positions."  CSL § 65(3); PRR, Rule 5.5.3.  Where a department has a large number of provisional employees, such that termination of all would "disrupt or impair essential public services," the commissioner of citywide administrative services may waive the two-month requirement and "authorize the termination of the employment of various numbers of such provisional appointees at stated intervals prescribed by such commission."  Id.  However, in no case may provisional employees be kept longer than four months following the establishment of an eligible list.  Id.  Put simply, "a provisional employee has no right to [a] position if a valid eligible list exists."  Green v. New York City Health and Hosp. Corp., No. 04 Civ. 5144, 2008 WL 144828, at *6 (S.D.N.Y. Jan. 15, 2008) (finding compliance with "civil service regulations" to be a legitimate, non-discriminatory reason for terminating a provisional employee after creation of an eligible list for that position); see Ajayi v. Dep't of Homeless Servs., No. 08 Civ. 3649, 2009 WL 1704329, at *11 (S.D.N.Y. June 18, 2009) ("Once DHS hired permanent Fraud Investigators, the Civil Service Law mandated that DHS terminate provisional Fraud Investigators.").

The record before the Court demonstrates that, on March 21, 2005, DHS notified Valcin and all other provisional fraud investigators that an eligible list had been certified for their

---

[6] Unlike those on the eligible list, provisional appointees are not required to establish their merit and fitness for a position through a competitive civil service examination. See CSL § 65(1).

position and, as a result, their employment might be terminated in the months ahead.  At that time, Valcin had not taken the fraud investigator civil service examination, nor did she at any time prior to her termination.  On June 8, 2005, DHS terminated Valcin's employment, with a letter explaining the action was taken "as a result of the certification of the civil service list for the Fraud Investigator title."  Valcin was among 35 provisional fraud investigators terminated by DHS, in 2005, in the wake of the certified eligible list.

Inasmuch as the plaintiff had not taken the civil service examination, New York law required that DHS terminate her employment to fill her position with a qualified candidate from the eligible list.  Accordingly, the defendant has met its burden of production by demonstrating a legitimate, non-discriminatory reason for Valcin's termination existed.

*Pretext for Discriminatory Intent*

The burden now shifts back to the plaintiff to produce sufficient evidence to support a rational finding that the non-discriminatory reason proffered by the defendant for the challenged employment action is false.  "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" Reeves, 530 U.S. at 146-47, 120 S. Ct. at 2108  (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742, 2756 [1993]).  "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." St. Mary's Honor Center, 509 U.S. at 519, 113 S. Ct. at 2754 (emphasis in original).  "[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.

The plaintiff contends the defendant's proffered reason for her dismissal is pretextual because: (1) DHS claims it terminated provisional fraud investigators based on performance ranking, yet at least two male provisional fraud investigators, who were ranked lower than Valcin, remained employed at DHS longer than Valcin; (2) DHS claims it could not rank provisional fraud investigators who, like Valcin, worked less than a year, yet some employees thus situated were, in fact, ranked highly by their managers; (3) DHS has not proven that the commissioner of citywide administrative services authorized DHS to terminate provisional employees in intervals; and (4) DHS failed to terminate its provisional fraud investigators within four months of the certification of the eligible list, as required by state law and city regulations.

Despite these discrepancies, the plaintiff has failed to prove that the inconsistencies in the defendant's proffered reason reflect an intention to discriminate against her for taking maternity leave. The overwhelming weight of evidence supports DHS's contention that it attempted to stagger the termination of provisional fraud investigators, based on performance. The e-mail correspondence among DHS managers regarding the terminations reflects, consistently, a ranking system based on performance and a concern with distinguishing between provisional fraud investigators who were and were not "certified" (qualified for permanent appointment from the eligible list). No negative correspondence about Valcin, or her decision to take maternity leave, exists. In fact, rather than give Valcin a poor rating for her extended absence from work, Valcin's manager explained she could not fairly rank Valcin because she was not sufficiently

familiar with her work.  Valcin's manager eventually ranked Valcin as the ninth best out of 20 provisional fraud investigators.

Two provisional fraud investigators, who were on maternity leave concurrently with the plaintiff, were retained by DHS, after the eligible list was certified, because they had taken the fraud investigator civil service examination, appeared on the certified eligible list, and, thus, were qualified for permanent appointment.  This suggests the key factor in deciding whether to terminate a provisional fraud investigator was whether the employee had taken the civil service examination and was on the certified eligible list.  Nearly all the provisional fraud investigators who were hired before or after Valcin and retained after she was discharged, were eventually terminated on July 2, 2006.  Among those terminated on July 2, 2006, was a woman who commenced maternity leave three months after the plaintiff and remained employed provisionally for ten months following her return from leave.  This suggests DHS did not schedule terminations so as to discriminate against those taking maternity leave.

Although DHS' evidence regarding the intricacies of its termination decisions is inconsistent, the record, considered as a whole, does not establish intentional discrimination.  Accordingly, summary judgment, for the defendant, is warranted.

*Supplemental Jurisdiction*

The defendant's motion for summary judgment applies solely to the plaintiff's Title VII claim.  Valcin retains a claim based on the City Human Rights Law.  The court may, in its discretion, exercise its supplemental jurisdiction authority over that claim.  See 28 U.S.C. § 1367(a).  A court has broad discretion to decide whether to exercise its supplemental jurisdiction authority over state and city law claims.  See United Mine Workers of America v. Gibbs, 383

U.S. 715, 726-27, 86 S. Ct. 1130, 1139-40 (1966); <u>Seabrook v. Jacobson</u>, 153 F.3d 70, 73 (2d

Cir. 1998).  A court may decline to exercise supplemental jurisdiction over state and city law

claims if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C.

§ 1367(c)(3).  Since dismissing the federal claim asserted in this action is warranted, it would be

reasonable and appropriate for the court to decline to exercise its supplemental jurisdiction

authority with respect to the plaintiff's City Human Rights Law claim.

### IV. RECOMMENDATION

For the reasons set forth above, I recommend that the defendant's motion for summary

judgment, Docket Entry No. 57, be granted.  I recommend further that the court decline to

exercise its supplemental jurisdiction authority over the plaintiff's City Human Rights Law

claim.

* * *

N.B. All unpublished decisions to which citation has been made are being provided to the

plaintiff with a copy of this order.

### V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties shall have ten (10) days from service of this Report to file written objections.  See

also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the

Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A.

Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the chambers of the

undersigned, 40 Foley Square, Room 540, New York, New York, 10007.

Any requests for an extension of time for filing objections must be directed to Judge

Batts. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A

WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v.

Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v.

Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d

Cir. 1983).

Dated: New York, New York                    Respectfully submitted:
      September 24, 2009

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Sandy Valcin
Jason A. Kroll, Esq.

15